## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| YOLANDA FERRIS, | : | Case No. 1:14-cv-52 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| UNIVERSITY OF CINCINNATI | : | |
| MEDICAL CENTER, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING THE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT LOCAL 217, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO AND OHIO COUNCIL 8, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AND AFL-CIO (Doc. 12)

This civil action is before the Court on Defendant Local 217, American Federation of State, County and Municipal Employees, AFL-CIO and Ohio Council 8, American Federation of State, Local and Municipal Employees, AFL-CIO's Motion for Judgment on the Pleadings (Doc. 12) and the parties' responsive memoranda. (Docs. 13 and 15).

## I.     FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff is an African American woman who worked as a laboratory technician at Defendant University of Cincinnati Medical Center, LLC ("UH"). (Doc. 1 at 2). Pursuant to her work, she was represented by Defendant Local 217, American Federation of State, County and Municipal Employees, AFL-CIO and Ohio Council 8, American Federation of State, Local and Municipal Employees, AFL-CIO (the "Union"). (*Id.*) On or about March 27th, 2013, Plaintiff was diagnosed with life-threatening renal failure.

(*Id.*)  As a result of that diagnosis, Plaintiff eventually was awarded Intermittent Leave under the Family Medical Leave Act ("FMLA").  (*Id.*)  On or about April 29, 2013, Plaintiff was involved in a workplace incident that resulted in a coworker making an allegedly false report of battery against her.  (*Id.* at 3).  Plaintiff was suspended effective April 30, 2013, and put on administrative leave.  (*Id.*)

The following excerpt from the Complaint is specifically relevant to the instant motion:

12. Defendant UH made no effective investigation of this incident, in fact, did not even talk to Plaintiff about what had transpired, nor did they review or produce the video of the area which existed (and, if produced as requested) would clearly have shown that Plaintiff did not commit a battery upon anyone.

13. Consequently, Plaintiff Ferris sought help from her Union Representative.

14. The Union Representative filed a grievance on her behalf and the Union pursued it, but failed to have important people from Defendant Local 217 present on August 26, 2013.

15. Although the decision was supposed to have been made in 10 days, Plaintiff Ferris did not get a decision until on or about December 8, 2013, at which point the grievance was denied.

16. Plaintiff Ferris immediately requested that the grievance be taken to the next step, arbitration, in accordance with the Defendant Union and Defendant UH contract.

17. Defendant Union, made a final decision not to pursue the grievance to arbitration and announced this to Plaintiff Ferris on December 16, 2013, a true copy of the email announcing said decision is attached as Exhibit A. (The exhibit states, in pertinent part, that neither the local nor national union will pursue the grievance for "lack of merit" with no further explanation).

2

18. The arbitration hearing, in all probability, would have resulted in Plaintiff's reinstatement, as the motivations for firing Plaintiff, appear to be Family Medical Leave Act retaliation, and retaliation against an African American woman. There was no real merit to the reason for her discharge, as seen by the fact that when an unemployment hearing finally was held on the matter, the hearing officer ruled that there was no just cause for Ferris' discharge. Furthermore, the witnesses making marginally supportive statements have since recanted, and the primary "victim" intimated to Plaintiff that she "just wanted to have something to use against the hospital", or words to that effect.

(*Id.* at 3-4; Doc. 13 at 2-4).

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings uses the same standard of review as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." *Vandenheede v. Vecchio*, No. 13-1253, 2013 WL 5433467, at *2 (6th Cir. Oct. 1, 2013).  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While this standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (*citing Twombly*, 550 U.S. at 555).  In fact, in determining a motion for judgment on the pleadings, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]" *Twombly*, 550 U.S.

3

at 555 (*citing Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*.

Accordingly, "[t]o survive a motion [for judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the claim shall be dismissed. *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

## III.   ANALYSIS

The Complaint purports to assert the following claims against Defendant Union: (1) a hybrid breach of duty of fair representation ("DFR") claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2) a claim of retaliation under the FMLA, 29 U.S.C. § 2615; and (3) claims of disability and race discrimination in violation of the Ohio Civil Rights Act, Ohio Revised Code ("O.R.C.") Chapter 4112. (Doc. 1 at ¶¶ 1, 28-31).

4

## A.     LMRA

To assert a viable hybrid breach of DFR claim under Section 301 of the LMRA, 29 U.S.C. § 185, a plaintiff must prove both that the employer breached the applicable collective bargaining agreement ("CBA") and also that the union failed to represent the plaintiff and, in so doing, permitted the breach to go unrepaired.  *See, e.g., Kelsey v. FormTech Indus.*, 305 F. App'x 266, 268 (6th Cir. 2008).

> To prove that the union breached its duty of fair representation, an employee must show that 'the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith.' … Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty.  Where a plaintiff fails to 'introduce factual allegations that the union breached its duty of fair representation, dismissal based on Rule 12(b)(6) is proper.'

*Dobrski v. Ford Motor Co*., 698 F. Supp.2d 966, 990-91 (N.D. Ohio 2010) (citations omitted).

"Although a union may not 'arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion,' an employee does not have an absolute right to have his grievance taken to arbitration."  *Id*. at 991 (*quoting Vaca v. Sipes*, 386 U.S. 171, 192 (1967)).  Accordingly, an allegation that a union did not pursue a grievance to arbitration is "legally insufficient to support a claim for breach of the duty of fair representation." *Id*.  Where a complaint "only alleges negligence or poor judgment," that complaint is insufficient to state a claim for a breach of DFR under the LMRA.  *Mathis v. CWA Local Union 4320*, No. 2:10-cv-1093, 2011 WL 3497189, at *3 (S.D. Ohio Aug. 9, 2011).

5

"[W]ithout additional information, alleging that a union did not sufficiently pursue a grievance is 'legally insufficient to support a claim for breach of the duty of fair representation.'" *Id.* at *4 (citations omitted).[1] There is no requirement that the grievance process be "error-free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976). With regard to the arbitrary prong, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67 (citation omitted). Mere negligence on the part of a union does not satisfy this requirement." *Whitten v. Anchor Motor Freight*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981 (1976) ("The Union may have acted negligently or exercised poor judgment in failing to keep Whitten informed of the status of his grievance, but this is not sufficient to support a claim of unfair representation").

In the case at hand, Plaintiff asserts that Defendant Union breached its DFR to her, in violation of Section 301 of the LMRA, by failing to pursue a grievance contesting her termination to arbitration. (Doc. 1 at ¶ 21). This allegation cannot withstand Fed. R. Civ.

---

[1] *See also Danton v. Brighton Hosp.*, 335 F. App'x 580, 585 (6th Cir. 2009) ("With regard to the arbitrary prong, a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational. … Mere negligence on the part of a union does not satisfy this requirement. … In essence, then, to prevail, a plaintiff has the difficult task of showing that the union's actions were 'wholly irrational'") (citations omitted); *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) ("Actions for a union's breach of its duty of fair representation depend for their rationale on the union's otherwise-complete control over the handling of an employee's grievance"); *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991) ("Just as … fiduciaries owe their beneficiaries a duty of care as well as duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith") (citations omitted).

P. 12(b)(6) scrutiny, because, as noted above, it is legally insufficient to state a claim of breach of DFR.  *Dobrski*, 698 F. Supp. 2d at 991.  The Complaint alleges first that "Defendant Local 217 pursued [the grievance], but failed to have important people from Defendant Local 217 present on August 26, 2013."  (Doc. 1 at ¶ 14).  The Complaint does not allege what occurred on August 26, 2013, nor does it identify what people Plaintiff believes should have been present on that date.

Assuming Plaintiff is alleging that Defendant failed to call a witness to a grievance hearing, the Complaint fails to state a claim that Defendant breached its DFR to her because "[a]s a general matter, unions are afforded considerable discretion in prosecuting grievances."  *Lemaster v. Anchor Hocking, LLC*, 954 F. Supp. 2d 702, 713 (S.D. Ohio 2013).  "[T]he plaintiff bears the burden of demonstrating 'that the grievance process was seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.'"  *Id*. at 712 (citation omitted).  An allegation of failure to call a witness that the grievant requests be called during the processing of a grievance does not state a claim for breach of a union's DFR.  *See id*. at 714 ("Although Lemaster maintains that other witnesses should have been called and other evidence presented, it is not the Court's role to second guess – with the benefit of hindsight – USW's tactical decisions"); *see also Bradshaw v. Goodyear Tire & Rubber Co*., 485 F. Supp. 2d 821, 828 (N.D. Ohio 2007) (finding no arbitrary or perfunctory handling of plaintiff's grievance where plaintiff complained of failure to introduce witnesses).  Absent any allegation of wholly irrational conduct on the part of

Defendant Union that seriously flawed the grievance procedure, the Complaint fails to state a claim that Defendant Union breached its DFR with respect to Plaintiff.  *See Danton*, 335 F. App'x at 585.

The Complaint also alleges that "[a]lthough the decision was supposed to have been made in 10 days, Plaintiff Ferris did not get a decision until on or about December 8, 2013, at which point the grievance was denied."  (Doc. 1 at ¶ 15).  The Complaint fails to identify any breach of the applicable CBA in this regard and fails to identify any alleged action or omission on the part of Defendant Union that would constitute a breach of its DFR.  Again, the Complaint must allege conduct on the part of Defendant Union that is "wholly irrational."  *See Danton*, 335 F. App'x at 585.  In addition, the Complaint alleges that "Defendant Local 217[ ] made a final decision not to pursue the grievance to arbitration and announced this to Plaintiff Ferris on December 16, 2013, a true copy of the email announcing said decision is attached as Exhibit A."  (Doc No. at 17).[2]  Exhibit A attached to Complaint is a copy of an electronic mail communication from Ohio Council 8 Staff Representative Joe Wilson to Plaintiff's counsel stating in pertinent part as follows: "AFSCME Ohio Council 8 has thoroughly reviewed Ms. Ferris' case for potential arbitration.  Due to a lack of merit, the Union will not be pursuing her case to arbitration. …The Local Union has also declined to pursue the matter to arbitration for the same reason stated above."  (Doc. 1-1).  The e-mail correspondence attached to the

---

[2] When determining the sufficiency of a complaint that is challenged under Fed. R. Civ. P. 12(c), a court may take into account exhibits that are attached to the complaint.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

Complaint does not evidence any lack of good faith, or arbitrary or discriminatory conduct on the part of Defendant Union. Rather, Exhibit A evidences that Defendant Union engaged in a review of the merits of the grievance in determining whether it was meritorious to proceed to arbitration, and thus that its conduct was, at the absolute minimum, not "wholly irrational" so as to constitute a breach of DFR.

The Complaint further alleges that "[t]he arbitration hearing, in all probability, would have resulted in Plaintiff's reinstatement, as the motivations for firing Plaintiff, appear to be Family Medical Leave Act retaliation, and retaliation against an African American woman…" (Doc. 1 at ¶ 18). This allegation, which amounts to an allegation that Plaintiff's grievance was meritorious, is conclusory and is not supported by factual allegations. As noted above, the Complaint fails to identify what provision, if any, of the CBA is alleged to have been breached or any facts supporting a breach of the CBA. Nevertheless, even assuming the grievance had merit, the allegations set forth in the Complaint do not set forth a claim that Defendant Union's conduct breached its DFR with respect to Plaintiff. As noted above, an allegation that a union failed to process a grievance to arbitration is, in itself, legally insufficient to state a claim of breach of DFR. *Vaca*, 386 U.S. at 195.[3] Rather, the Complaint must allege facts that if true would

_____

[3] *See also Henry v. Murtis H. Taylor Multi-Serv. Ctr.*, No. 1:05 CV 1598, 2007 WL 81855 (N.D. Ohio Jan. 8, 2007) ("That Plaintiff is unhappy with the end result, and believes the Union should have argued for arbitration rather than against, does not – in and of itself – establish that the Union did not fairly represent Plaintiff, or that the Union's ultimate decision was made in bad faith. … Even if Plaintiff offered proof that her grievance was meritorious, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious").

9

evidence bad faith on the part of Defendant Union; as the Complaint fails to do so, it fails to state a claim of breach of DFR.  *Id.*

Further, the conclusory statement that "the motivations for firing Plaintiff, appear to be [FMLA] retaliation, and retaliation against an African American woman" is not supported by factual allegations, and therefore does not set forth a claim upon which relief can be granted.  (Doc. 1 at ¶ 18); *Mathis*, 2011 WL 3497189 at *4 (with respect to the discrimination prong, "a plaintiff's claim of a breach of the duty of fair representation will survive a motion to dismiss only if the alleged discrimination is 'intentional, severe, and unrelated to legitimate union objectives.'  Racial discrimination is not a legitimate union objective.  However, without additional information, alleging that a union did not sufficiently pursue a grievance is 'legally insufficient to support a claim for breach of the duty of fair representation'").

Finally, the Complaint alleges that "[t]here was no real merit to the reason for [Plaintiff's] discharge, as seen by the fact that when an unemployment hearing finally was held on the matter, the hearing officer ruled that there was no just cause for Ferris' discharge …"  (Doc. 1 at ¶ 18).  Assuming Plaintiff prevailed on a claim for unemployment compensation against Defendant UH, a determination on a request for unemployment compensation benefits has no bearing on the merits of Plaintiff's grievance or her claims of FMLA retaliation and disability and race discrimination.  Ohio's unemployment compensation statute specifically provides:

10

> No finding of fact or law, decision, or order of the director, hearing officer, the commission, or a reviewing court under this section or section 4141.28 of the Revised Code shall be given collateral estoppel or res judicata effect in any separate or subsequent judicial, administrative, or arbitration proceeding, other than a proceeding arising under this chapter.

O.R.C. § 4141.281(D)(8); *see Williams v. United Steel Workers of Am.*, 487 Fed. Appx. 272, 276 (6th Cir. 2012); *Murray v. Kaiser Permanente*, 52 Fed. Appx. 725, 727 (6th Cir. 2002).  The rationale underlying this statutory provision is that the standard for determining just cause for purposes of unemployment compensation differs from the standard applied to determine whether an employer has just cause to discipline an employee under the terms of a CBA:

> [A]n employee terminated for 'just cause' according to a labor contract could theoretically secure unemployment benefits; the 'just cause' sufficient to justify discharge of an employee need not be as grave as the 'just cause' required to disqualify a discharged employee from receiving unemployment compensation under R.C. 4141.29.

*Wilson v. Matlack, Inc.*, 141 Ohio App.3d 95, 750 N.E.2d 170, 174 (4th Dist. 2000) (citations omitted); see also *Youghiogheny & Ohio Coal Co. v. Oszust*, 23 Ohio St.3d 39, 491 N.E.2d 298, 300 (1986).  As a result, Plaintiff's allegation that she prevailed on a claim of unemployment compensation does not state a claim that that the CBA was breached or that Defendant Union's conduct in its representation of Plaintiff was arbitrary, discriminatory, or in bad faith.

Accordingly, the Court finds that Plaintiff has failed to state a viable hybrid breach of DFR claim under the LMRA against Defendant Union.

11

**B.      FMLA**

The Complaint alleges that Defendants violated the FMLA, on the basis that "Plaintiff's firing was in violation of the provision in the Family Medical Leave Act regarding retaliation."  (Doc. 1 at 5).  A claim for FMLA retaliatory discharge may be brought under either 29 U.S.C. §§ 2615(a)(1) or (a)(2), which provide as follows:

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).[4]

Other statutes that permit actions against labor organizations do so not by including unions within the definition of employer, but by specifically providing for suits against labor organizations *in addition* to suits against employers.  *See. e.g.*, 42 U.S.C. § 2000e-2 (unlawful labor organization practices are distinct from unlawful employer practices under Title VII); 42 U.S.C. § 12111(2) (labor organizations are expressly included in the definition of a 'covered entity' within the meaning of the ADA).  The FMLA, in contrast, is silent as to labor organizations.

---

[4] *See also Carey v. ODW Logistics Inc.*, No. C2-08CV-0581, 2010 WL 596503, at *3 (S.D. Ohio Feb. 16, 2010) (*citing Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007)); 29 C.P.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights").

*Eckert v. UAW Local Union 897*, No. 04-CV-538S, 2005 WL 2126295, at *9 (W.D.N.Y.

Sept. 1, 2005); *accord Frees v. UA Local 32 Plumbers & Steamfitters*, 589 F. Supp. 2d

1221 (W.D. Wash. 2008).

      The FMLA's definition of "employer" includes "any person who acts, directly, or

indirectly, in the interest of an employer to any of the employees of such employer."

29 U.S.C. § 2611(4)(A)(ii)(I). The facts alleged in the Complaint do not support a

finding that Defendant Union acted in the interest of Defendant UH. Indeed, the

Complaint acknowledges that Defendant Union's role was adversarial to that of

Defendant UH: Local 217 filed a grievance on Plaintiff's behalf to contest her discharge

and pursued that grievance up to the point that it would have proceeded to arbitration.

(Doc. 7 at ¶¶ 13-14, 17); *see Eckert*, 2005 WL 2126295 at *9 ("As Plaintiff himself

intimates in his amended complaint and motion, the UAW's role is precisely the

opposite; it is to represent his interests and act as his 'legal defender' relative to his

employment at and termination by Ford") (*citing Scamihorn v. Gen'l Truck Drivers*, 282

F.3d 1078, 1081 n.2 (9th Cir. 2002) (noting dismissal of FMLA claim against union on

the basis that union was not plaintiff's "employer" as defined in the Act)).

      Accordingly, the Court finds that even if Plaintiff were entitled to exercise FMLA

rights, and did so under the Act, Defendant Union cannot be held liable on a theory of

FMLA retaliation, as neither Local 217 nor Ohio Council 8 was her employer.

      Even if Defendant Union could be held liable on a theory of FMLA retaliation,

however, the Complaint also fails to state such a claim. The Sixth Circuit has held that a

claim for retaliatory discharge under the FMLA may be brought under either an interference theory or retaliation theory. *See. e.g., Carey*, 2010 WL 596503 at *3 (*citing Wysong*, 503 F.3d at 446). To succeed on an FMLA interference claim, Plaintiff must establish that (1) she was an FMLA- eligible employee; (2) the Employer was an employer subject to the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff gave the Employer notice of her intention to take leave; and (5) the Employer used the taking of FMLA leave as a negative factor in disciplinary action against Plaintiff. *Id*. at *4. To succeed on an FMLA retaliation claim, Plaintiff must establish that (1) Plaintiff engaged in a protected activity under the FMLA; (2) the Employer knew she had exercised her rights; (3) Plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *Id*.

The Complaint does not allege facts that, if proven, would establish the preliminary allegations of an interference claim – that Plaintiff was an "eligible employee" under the FMLA (29 U.S.C. § 2611(2)); that Defendant UH is an "employer" under the Act (29 U.S.C. § 2611(4)); or that Plaintiff was entitled to leave under the FMLA. Plaintiff does allege that "[o]n or about March 27, 2013 … [she] was awarded Intermittent Leave under the [FMLA]" and that, the following month, "[o]n or about April 29, 2013" she was involved in the incident that led to her discharge. (Doc. 1 at ¶¶ 7-8). However, the Complaint fails to allege any facts that would establish causation under either an FMLA interference or retaliation claim. There are no facts alleged to

14

support a claim that Defendant UH based its discharge of Plaintiff on her request for or use of FMLA leave. With respect to Defendant Union, the Complaint does not allege that it was even notified of Plaintiff's purported FMLA eligibility or her request for or use of FMLA leave.

The only alleged fact that could arguably support Plaintiff's FMLA claim is temporal proximity between the alleged dates of the awarding of FMLA leave and the incident giving rise to Plaintiff's discharge. However, while temporal proximity may serve as indirect evidence of interference or pretext, it is not legally sufficient to state a claim of retaliatory discharge under the FMLA. *Denton v. Fairfield Med. Ctr.*, No. 2:11-cv-0716, 2012 WL 2409224, at *4 (S.D. Ohio June 26, 2012) ("The only factual allegations contained within the Amended Complaint which might be relied upon to establish a causal connection is the temporal proximity between the taking of FMLA leave and the termination. This single allegation, however, is insufficient to plausibly state a claim for relief").[5]

In the case at hand, the Complaint fails to allege any facts that, if true, would permit recovery under an FMLA retaliation claim. It does not allege any facts that would constitute direct evidence of FMLA retaliation, nor does it identify similarly-situated employees that have not exercised any FMLA rights and are alleged to have been treated more favorably than Plaintiff. *Skrjanc*, 272 F.3d at 317.

---

[5] *See also Carey*, 2010 WL 596503 at *4-5 (proving temporal proximity alone insufficient to succeed on FMLA retaliation claim); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual").

Accordingly, the Court finds that Plaintiff has failed to state a viable FMLA retaliatory discharge claim against Defendant Union.

## C.    State Law Claims

The Complaint alleges that Defendant Union discriminated against Plaintiff on the basis of her race and purported disability, an alleged violation of O.R.C. § 4112.02.  The Supreme Court of Ohio has held that federal case precedent applying Title VII of the Civil Rights Act of 1964, 29 U.S.C. §§ 2000e *et seq.*, applies to claims brought under O.R.C. § 4112.02.  *See Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 632 (6th Cir. 2009).  Likewise, the Supreme Court of Ohio has looked to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, in its review of disability discrimination claims brought under O.R.C. § 4112.02.  *See. e.g., Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206-7 (1998).

> …[C]ourts have recognized that an employee may bring a Title VII discrimination suit against a union (rather than an employer), based on a union's representation of the employee.  To successfully do so, the employee must establish the following: "(a) the employer committed a violation of the collective bargaining agreement; (b) the union permitted the violation to go unrepaired, thereby breaching its own duty of fair representation; and (3) the union was motivated by [discriminatory] animus."

*Roe v. Gates*, No. 3:03cv192, 2009 WL 3063393, at *14 n.16 (S.D. Ohio Sept. 21, 2009) (*quoting Rice v. Randall Bearings, Inc*., No. 3:06 CV 1774, 2007 WL 2973600, at *5 n.1 (N.D. Ohio Oct. 9, 2007) and *citing Bugg v. Int'l Union of Allied Indus. Workers, Local 507 AFL-CIO*, 674 F.2d 595, 598 n.5 (7th Cir. 1982), *cert. denied*, 459 U.S. 805 (1982));

16

*see also Wimpye v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO/CLC, Local Lodge 1943*, 1:11-CV-845, 2012 WL 1340363, at \*3 (S.D. Ohio Apr. 17, 2012) *report and recommendation adopted*, C-1-11-845, 2012 WL 3070814 (S.D. Ohio July 30, 2012); *Patterson v. United Steelworkers of Am., Local 9*, No. 3:04 CV 7019, 2005 WL 1539264, at \*2 (N.D. Ohio June 3, 2005). This standard also applies to claims of disability discrimination brought against unions. *Bradshaw v. Goodyear Tire & Rubber Co.*, 485 F. Supp. 2d 821, 827 (N.D. Ohio 2007).

Reviewing the Complaint in light of this standard demonstrates that the Complaint fails to state a claim of race or disability discrimination against Defendant Union. With respect to the first and second prongs noted above, the Complaint fails to allege a violation of the applicable CBA, and fails to state a claim that Defendant Union breached its DFR with respect to Plaintiff. The Complaint sets forth a conclusory allegation that "[t]he actions of Defendants are violations of the Ohio Revised Code 4112.02, which protects against discrimination against individuals with disabilities and discrimination against individuals on the basis of race." (Doc. 1 at ¶ 29). However, the Complaint does not set forth any factual allegations supporting this conclusion. It does not allege facts that would constitute direct evidence of disability or race discrimination. *See Patterson*, 2005 WL 1539264 at \*4 (holding "mere generalized complaints against the Union" were insufficient to establish causation in Title VII race discrimination claim against union). It does not allege that Defendant Union treated Plaintiff less favorably than similarly-situated bargaining unit members who were not in Plaintiff's protected class. With

17

respect to Plaintiff's disability discrimination claim, the Complaint does not allege that the Union had knowledge or reason to know of Plaintiff's purported disability or that Defendant Union's representation of her was motivated by Plaintiff's purported disability. "[V]ague and unsupported allegations" do not set forth a prima facie case of discrimination against a labor union. *Wympye*, 2012 WL 1340363 at *3.

Accordingly, the Court finds that Plaintiff has failed to state viable race or disability discrimination claims against Defendant Union under Ohio law.

## IV. CONCLUSION

Based on the foregoing, Defendant Local 217, American Federation of State, County and Municipal Employees, AFL-CIO and Ohio Council 8, American Federation of State, Local and Municipal Employees, AFL-CIO's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and Plaintiff's claims against this Defendant are hereby **DISMISSED**.

**IT IS SO ORDERED**.

Date: 7/21/14

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge

18